STRUZYNSKI ET AL. *v.*
BORDEN CHEMICAL DIVISION,
BORDEN, INC., APPELLEE; MOFFATT
ENTERPRISES, INC., APPELLANT.

(No. 3946—Decided
January 5, 1989.)

*Arter & Hadden, Richard A. Dean* and *Victoria L. Vance, Sidley & Austin, Michael W. Davis* and *James A. Huttenhower,* for appellee.

*Baker, Meekison & Dublikar, Jack R. Baker* and *Merle D. Evans III,* for appellant.

*Per Curiam.* In January 1978, Moffatt Enterprises, appellant, entered into a distributor agreement with Borden Chemical Division of Borden, Inc., appellee. Pursuant to the agreement, appellant received a product from appellee called Insulspray, a type of thermal insulating material, and then distributed the product to independent contractors for installation. Under the agreement, *inter alia,* appellant agreed to indemnify appellee as to any "* * * claims, damages, losses and expenses, including attorneys' fees, including but not limited to claims made by customers of distributor and customers of distributor's contractors, resulting from the handling, storage, transporting, mixing, sale, application or use of the product."

One of the contractors selected by appellant was Cross Thermal Acoustics. Cross Thermal Acoustics installed Insulspray in the home of Ben and Helen Struzynski in East Orwell, Ohio.

On August 11, 1982, the Struzynskis filed a complaint against appellee, appellant and Cross Thermal Acoustics alleging personal injury and property damage resulting from exposure to

formaldehyde contained in the Insulspray. Appellee filed a third-party complaint against appellant seeking indemnification from appellant under the distributor agreement for any "judgment" that might be rendered in favor of the Struzynskis against it. Appellee attached a copy of the Struzynskis' complaint and a distributor agreement executed by the parties dated January 18, 1978 to its third-party complaint. Appellant filed an answer to the third-party complaint generally denying the complaint's averments and setting forth six other defenses.

On December 18, 1985, the Struzynskis reached a settlement agreement with appellee Borden and Cross Thermal. Under the terms of the agreement, the Struzynskis were to receive $10,000 from appellee Borden and $5,000 from Cross Thermal. The settlement agreement relieved appellee Borden, Cross Thermal, and Moffatt of any further liability to the Struzynskis. The only claim left pending was appellee Borden's claim against appellant as the third-party defendant.

On September 25, 1986, appellee filed a motion for summary judgment in its third-party complaint. It attached a memorandum in support of its motion and an affidavit of Attorney Michael W. Davis to the effect that Eugene U. Moffatt, President of Moffatt Enterprises, had signed the distributor agreement between the parties. Davis further stated in his affidavit that a copy of the distributor agreement was attached to his affidavit, but nothing was attached to Davis's affidavit. In his affidavit, Davis also stated that appellant had never identified any policy of general comprehensive liability insurance which it had purchased pursuant to the distributor agreement to protect appellee from any liability as to customer claims involving Insulspray.

On October 21, 1986, appellant filed a brief in opposition to appellee's motion for summary judgment. On the same date, appellant filed a motion for summary judgment. A brief was filed in support of the motion. An affidavit of Eugene U. Moffatt was attached to the motion. On December 1, 1986, appellee filed a memorandum in opposition to appellant's motion for summary judgment and attached four exhibits. On April 28, 1987, appellant filed a supplemental brief in support of its motion for summary judgment and attached a second affidavit of Eugene U. Moffatt. On May 19, 1987, the court granted appellee's motion to strike the affidavit of Eugene U. Moffatt, which was filed on April 28, 1987.

On May 19, 1987, the trial court granted appellee's motion for summary judgment as to liability only and denied appellant's motion for summary judgment as to liability only. The court, on August 12, 1987, entered a judgment for appellee in the amount of $36,787, an amount which the parties stipulated as reflecting the amount of appellee's settlement plus the reasonable value of appellee's attorney fees and expenses in connection with defending the original litigation.

Appellant has appealed the judgment of the trial court and has filed the following two assignments of error:

"1.   The trial court erred in granting summary judgment on count four of Borden's third-party complaint regarding the alleged failure of Moffatt Enterprises, Inc., to obtain general comprehensive liability insurance as provided in paragraph 9 of the 1978 Distributor Agreement.

"2.   The trial court erred in granting summary judgment on count three of Borden's third-party complaint since the indemnity provision in paragraph 9 of the 1978 Distributor Agreement is void and unforceable [sic] as a matter of law."

We consider appellant's two assignments of error as arguments in support of what, in reality, is its sole assignment of error, to wit: The trial court erred in granting appellee's motion for summary judgment.

The revised assignment of error is well-taken.

Appellant first argues several issues in which, in essence, it claims that the enforceability of the indemnity clause involved here has been determined by prior litigation in the United States District Court, Western District of Pennsylvania.

First, it argues that the effect of their particular litigation was a bar to these proceedings under the doctrine of *res judicata* and/or collateral estoppel. Under Ohio law, these items are considered affirmative defenses and are governed by Ohio Civ. R. 8(C), which provides in pertinent part:

"In pleading to a preceding pleading, a party shall set forth affirmatively * * * estoppel * * * [and] *res judicata* * * *."

A review of the record here demonstrates that appellant's pleading contain no assertion of these affirmative defenses. As such, they are deemed to be waived. *Cobb* v. *Aytch* (E.D. Pa. 1979), 472 F. Supp. 908.

Secondly, the record here does not contain a properly certified conclusionary entry from the litigation in the district federal court. Specifically, the record here contains a copy of a judgment entry signed by the judge. However, there is no evidence of a time stamp or anything on the document to the effect that it has been filed with the clerk for journalization or that it has in any way been certified. Under Ohio Civ. R. 58, "a judgment is effective only when filed with the clerk for journalization." *Cale Products, Inc.* v. *Orrville Bronze & Alum. Co.* (1982), 8 Ohio App. 3d 375, 8 OBR 489, 457 N.E. 2d 854. The Federal Rules of Civil Procedure contain a similar provision.

"* * * Rule 58 provides that when the court directs that a party recover only money or costs the Clerk shall enter judgment forthwith, upon receipt by him of the direction, and also provides that notation of the judgment in the civil docket, provided by Rule 79(a), constitutes the entry of the judgment." *Ram* v. *Paramount Film Distributing Corp.* (C.A.4, 1960), 278 F. 2d 191, 193.

Consequently, the lack of a properly entered judgment entry from a sister court reinforces the denial of the application of *res judicata* in the instant cause.

With respect to the second and third issues argued in this context, appellant contends in its conflict of law argument that the distributor agreement involved here should be interpreted under the laws of Pennsylvania rather than Ohio. In the case *sub judice*, the distributor agreement between the appellant and appellee does not contain an express choice of which law should be followed. One of the leading cases in Ohio relevant to a situation where there is no expression of which state law should apply is found in *Gries Sports Enterprises, Inc.* v. *Modell* (1984), 15 Ohio St. 3d 284, 15 OBR 417, 473 N.E. 2d 807, which provides that the following essential elements are to be considered in arriving at a conclusion as to the applicable law in such cases:

"(a)  the place of contracting,

"(b)  the place of negotiation of the contract,

"(c)  the place of performance,

"(d)  the location of the subject matter of the contract, and

"(e)  the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* at syllabus.

A review of the record in this context discloses that the distributor agreement was drafted and executed by appellee in Ohio. It was signed in

Pennsylvania. Cross Thermal's employees who installed the insulation were all trained by appellant in Ohio. The Insulspray was installed in a home located in Ohio. Appellant's domicile is in Pennsylvania. However, the rest of the parties, appellee Borden, Cross Thermal, and the plaintiffs, are all domiciled in Ohio. It is unequivocal that the appellant did do business in Ohio as is true in the instant situation. Therefore, we conclude that under the *Gries* criteria, the applicable law is that of Ohio.

In the fourth issue raised by appellant under this argument, it contends that an indemnity clause in such a distributor agreement which relieves one from the results of one's own negligence must be strictly construed and expressed in clear and unequivocal terms. It further asserts in this context that the contract was not freely negotiated between it and the appellee.

Paragraph 9 of the 1978 distributor agreement in pertinent part provides:

"Distributor [Moffatt] shall indemnify and hold harmless Manufacturer [Borden] and its agents and employees from and against all claims, damages, losses and expenses, including attorneys' fees, including but not limited to claims made by customers of Distributor and customers of Distributor's contractors, resulting from the handling, storage, transporting, mixing, sale, application or use of the product."

Ohio law provides and permits enforcement of such indemnity provisions in distributor agreements. Appellant contends it was forced into signing such agreement if it wished to become an authorized distributor of the Insulspray product. However, there was no demonstration of such constraint or inappropriate dealing on the part of the appellee. Without more, we find the authority and rationale expressed in *Glaspell* v. *Ohio Edison Co.*

(1987), 29 Ohio St. 3d 44, 29 OBR 393, 505 N.E. 2d 264, to be controlling here.

"Appellants' possession of property for which appellee sought rights of access and use merely describes the ordinary circumstances which give rise to a freely negotiated agreement. That a company bargains from a position of need and would consider it inadvisable to engage in a particular enterprise unless access to specific resources were available cannot be construed as a coercion which offends public policy * * *." *Id.* at 47, 29 OBR at 396, 505 N.E. 2d at 269.

Other Ohio cases have, in effect, held that the word "negligence" need not be expressly contained in such an indemnity clause in order for the manufacturer to seek compensation. See *St. Paul Mercury Indemn. Co.* v. *Kopp* (App. 1954), 70 Ohio L. Abs. 259, 121 N.E. 2d 23, and *D'Onofrio* v. *Sun Oil Co.* (C.A.6, 1960), 277 F. 2d 543. Thus, the foregoing arguments of the appellant are without merit.

We now turn our attention to those submissions of the appellant that are addressed to the specific mechanics of the summary judgment exercise undertaken in the trial court.

In *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267, the Ohio Supreme Court stated:

"Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Id.* at 327, 4 O.O. 3d at 472, 364 N.E. 2d at 274.

Civ. R. 56 establishes summary

judgment as a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing to try. *Norris* v. *Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1, 24 O.O. 3d 1, 433 N.E. 2d 615. The burden of showing that no genuine issue exists as to any material fact falls upon the party requesting a summary judgment. When a motion for summary judgment is made and supported, an adverse party must counter with affidavits or other evidentiary material provided for in Civ. R. 56(C) to create a genuine issue as to any material fact. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 8 O.O. 3d 73, 375 N.E. 2d 46. The inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion. *Williams* v. *First United Church of Christ* (1974), 37 Ohio St. 2d 150, 66 O.O. 2d 311, 309 N.E. 2d 924.

In the instant cause, appellee filed a motion for summary judgment with an attached affidavit which did not adequately support the motion with evidentiary material in order to sustain appellee's burden of showing that no genuine issue existed as to any material fact. Therefore, although appellant filed no evidentiary material contra appellee's motion for summary judgment, appellant had no duty to do so because it was not "appropriate" for summary judgment to be entered against appellant. See Civ. R. 56(E) and *Toledo's Great Eastern Shoppers City, Inc.* v. *Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St. 3d 198, 24 OBR 426, 494 N.E. 2d 1101.

Construing the material filed by appellee in support of its motion for summary judgment most strongly in favor of appellant, we cannot conclude, as did the trial court, that reasonable minds could come to but one conclusion, that is, that a "judgment" (or settlement) had been rendered against ap-

pellee and in favor of the Struzynskis which would entitle appellee to indemnification from appellant under the terms of the distributor agreement entered into by the parties. Appellee filed no evidentiary material permitted by Civ. R. 56(C), except the affidavit of Attorney Michael W. Davis. This affidavit did not constitute any evidence as to the predicate necessary for the application of the indemnification provision of the parties' distributor agreement. The material issue of liability as to the third-party complaint remains to be litigated.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., COOK and CHRISTLEY, JJ., concur.